If we're ready, let's proceed. The first case is Lewis versus Powers 19-14-24. And Mr. Stern, you may proceed for the appellant. You're on mute. You're on mute, Mr. Stern. How about that? There you go. Okay, start over. Thank you, Judge. Good morning to Council and may it please the Court. My name is James Stern, and I have the privilege of representing the appellant and cross appellee, Mrs. Lupita Lewis. I understand I have 15 minutes, and with the Court's permission, I'd like to reserve five minutes of this time for rebuttal. With the Court's indulgence, I intend to address the City of Littleton's cross appeal at the eight-minute mark. Additionally, plaintiff appellant filed a motion on August 28, 2020, requesting to physically file Trial Exhibit 2, a compendium of digital files of exhibits, and a video file viewed by the jury. August 31, an order was issued by the clerk that the panel would later issue an order. The video would help the panel to assimilate and understand the facts and evidence in this matter, and I ask that you review it. The jury in the lower court trial heard Mr. Powers' expert, Mr. Barbera, testify that Mr. Powers' headlights had aged and diminished to a point where their effective range of illumination was not sufficient to light up the road ahead of him at a speed exceeding 25 miles per hour. The paramedics called to the scene wrote in their report that the driver could not verify how patient hit the vehicle. The accident reconstruction police officer testified that based upon his investigation, the physical evidence, the damage to the vehicle, the lack of a hard braking marks in the road, that Mr. Powers was unaware he was hitting a person until he hit them. Seven days after the collision, Mr. and Mrs. Powers gave a recorded statement to their insurance company that, quote, I saw the person when the accident had happened. They didn't say she jumped out at them, just that he didn't see her. Mr. Testerman, the southbound driver, testified at trial that she was always continuously walking. He testified that he watched Mr. Powers drive toward Mrs. Lewis for a period of time. Mr. Powers didn't, quote, maneuver to avoid hitting the pedestrian, didn't give sufficient space to avoid hitting the pedestrian, and unexpectedly, the car did not swerve out of the way, but he didn't. And, oh, and expected the car to swerve out of the way, but he didn't. The jury heard the evidence, and it resolved, didn't find any negligence on the part of Mr. Powers. You know, at this point on appellate review, are you asking us to reweigh the evidence, or, you know, what can an appellate court do at this point, given the jury's verdicts? Well, Judge, despite all this clear evidence, the jury's verdict was that she was solely negligent, and this isn't a reasonable verdict. And yes, the court must weigh the jury's verdict, as it was so clearly unreasonable and not based on the facts. Well, it was based on the facts put forward by the other side. Isn't that what happened? Judge, what happened is, I believe this is a verdict based on juror bias, and that they didn't believe she should be out. There was no real facts that she had done anything wrong. Well, sure, there was testimony contrary to your expert's testimony, and contrary to your client's evidence. And we don't go and, at this point, check the jury for bias, I didn't think. Well, Judge, I would just ask that if, when you look at what their evidence was, which was that she jumped out in front of him, it doesn't make, that none of their evidence makes sense, and was contradicted by all of the disinterested parties, and you have to look at that I believe the reason they came to this conclusion is they didn't feel that a blind woman should be out walking. And I think that's what the evidence shows, that the weight of this evidence is so strongly that she did nothing wrong, other than happened to walk well, and other than she became confused, and came out into the road, and was walking in the road. What if she was a construction worker, and they found the same thing? He was out doing his job, and got hit from behind, knocked through the windshield, and they go, it's the construction worker's fault. But what is very specific evidence that the juror was biased against the blind? Judge, I wasn't, no, there, there, I was not in the jury room. But if we just, it's, one of the things I looked at, Judge, was the case of Plessy versus Ferguson. And I thought that it might have been interesting, in that, in Plessy versus Ferguson, this was a man who was, like my client, a second-class citizen, who could not move freely, because he was an octoroon. And he asserted that it was unconstitutional. He brought his case in front of a jury, they found him guilty. Then he best hope. And they also found they did not reverse. And I think that if we, if that if we look at this, at this time, it's clear that Mr. Plessy had no chance before a jury or a court at his time. It was only a plea to the federal court that could bring him justice and protect his constitutional rights. I thought, I thought the holding in Plessy was the, basically upheld the Jim Crow South's separate but equal policies that they'd adopted in the wake of the Reconstruction amendments. How's that? How's that apply here? Well, Judge, that was the finding. And it's shocking as it was a seven to one majority opinion. And they and they made very shocking findings. And there was only one dissenter, as you know, Justice Harlan. And, and it clearly was the man was not going to get justice at that time. When, and this is the issue. Now, was there any evidence that the Louisiana jury was prejudiced towards had prejudice or bias? No. There was, there's no evidence of that. You just have to look at the society or ask why is it? Did you raise the bias claim in the district court? I raised it in my Yes, in my motion for a new trial, I said that clearly this verdict is based on it cannot be reconciled with the evidence in court. And Judge, I realize I've gone past the eight minute mark. And I wanted to also address the cross appeal. Okay, please. Okay. Um, the city of the city of Littleton appeals and alleges that the lower court erred and not awarding it 41,000 in attorney's fees and 12,000 incurred costs in filing a 12 v one motion to dismiss for lack of subject matter of jurisdiction with regard to tort claims. This is alleging more than 53,000 in attorney's fees and costs and making a motion to dismiss for lack of subject matter jurisdiction. Aside from the unreasonableness of the city's motion for attorney's fees and costs, the city of Littleton's cross appeal must be denied because the court did in fact have subject matter jurisdiction. First, there was a timely insufficient notice of playing served on June 9 2014. And it was included in the city's initial disclosures as pages 17 to 19. Secondly, sovereign immunity is waived by the CGI a that's the immunity statute for dangerous conditions on sidewalks. And this has been the law for 31 years since the Colorado Supreme Court's decision in city of Aspen versus Missoula, which I cited in my brief. And this issue was also briefed to the lower court in plaintiff's opposition to the city's motion dismiss motion for summary judgment. Thirdly, it's not true that the lower court ignored the jurisdictional nature of the city's CGI argument. Magistrate Haggerty discussed it in nearly every page of his order. On page two of the order. The lower court states that the city presents a jurisdictional issue reviewed under 12 v one in a footnote and notes that the defendant cites no legal standards. Next, the court carefully discusses its reasoning as to why it cannot consider its cannot consider its dismissal one under 12 b is the lower court reason that it is not pursuant to rule 56. It would have been deemed a 12 c judgment on the pleadings, which neither of the attorney word statutes provide for. Lastly, the city argues that any motion raising a CGI defense is considered a 12 b one motion incites to Trinity versus Westminster. This is an overstatement of the holding in Trinity. Trinity's relevant holding was that there was a factual dispute as to whether notice was timely, and the court must apply a 12 b standard and resolve the factual issue as a trier of fact of whether there was a timely service of the notice. In this matter, a timely notice of 24-10-109 notice of service was served, and the city never alleged otherwise, so there was never a need for a Trinity hearing. And I reserve the remainder of my time if I may, Judge. Thank you, counsel. Let's turn to the appellees, and I think Ms. Byrne is going to proceed first. Good morning, and may it please the court. I'm Kathleen Byrne, Bertrice Alfre Musat, representing Colorado Center for the Blind. And as you know, we have a lot of appellees in this case. So in an effort to manage all the time, I was going to speak to the jurisdictional issues as to all of the defendants, and then as to the five entity defendants, to the summary judgment issues. And then I plan to pass to Mr. Falls for defendant powers, but Mr. Ringel may also want to join in and address the argument on the cross appeal as well. So as to the jurisdictional issue, this is kind of the elephant in the room. Plaintiff failed to reference any order in her notice of appeal other than the order on the motion for new trial. She filed her notice of appeal 27 days after the entry of judgment on the motion for new trial, denying the motion for new trial. And she filed nothing else within the 30-day period for the notice of appeal. Now, I acknowledge that there is a functional equivalent test that can be used to pull other documents into the equation as to what was timely filed, but there were no other documents filed within the 30-day period for the notice of appeal. In some cases, an opening brief is filed within the 30 days or a petition for habeas corpus might be filed, and the court can examine whether those documents would suffice as a functional equivalent. But what there is no equivalent for is a timely filed document. And in this case, because the notice of appeal references only the order on the motion for new trial, and there's no clear intent to appeal any other order, plaintiff's appeal, this court lacks jurisdiction to decide any other issue on appeal except for the ruling on the motion for a new trial. The docketing statement was filed 52 days later. I'm happy to address that if the court would like, but because it's beyond the 30 days, it's a moot point. It doesn't serve to preserve those orders for appeal. We also have rulings on five parties' motions for summary judgment, sometimes dismissals, on claims under the American Disabilities Act, Rehabilitation Act, and also claims of negligence. Because appeal of these orders should be precluded because the court lacks jurisdiction, I don't know whether the panel would like to ask any of us, entity defendants, any questions as to those orders. But we welcome your questions at this time. I have no questions. I'd be interested in Littleton's response to Mr. Stern's position on the fees. Thank you, Your Honor. The issue here is the clear argument with respect to the clear law in Colorado with respect to all CGI issues being 12 v. 1 issues and therefore mandatory attorney's fees. The cases are universal and it's not limited to the issue of whether there's a timely notice of claim. The issue of whether a particular claim falls within a waived area under the Colorado Government Immunity Act is also decided under Colorado law as a 12 v. 1 issue. The issue here is that what happened was the district court, the magistrate judge, decided the negligence issue by determining that it wasn't within a waived area and the specific waived area related to the operation and maintenance of sidewalks under the Governmental Immunity Act. And as a result of that decision, it's mandatory under Colorado law, under Trinity Broadcasting, the case that Mr. Stern cited and its progeny cited in our brief, that it is a 12 v. 1 issue. And because it's a 12 v. 1 issue, the court was required to award attorney's fees and costs under the applicable statutes under Colorado law. Didn't the district court find that the substantive issue of negligence was intertwined with the 12 v. motion effectively making this a Rule 56? So the court did decide that it was a Rule 56 issue, but that's error, Your Honor. And the reason that that is error is under the rubric set up by the Supreme Court for these kind of decisions, the Colorado Supreme Court, it requires it to be a 12 v. 1 decision. If the court thought that there were facts that needed to be found on the negligence issue and on the waiver issue, that is a fact issue for the court. What happens in these cases is the court is allowed to allow discovery on the 12 v. 1 issue and hold what after the case that Mr Stern cited is called a Trinity hearing and make a determination. The court held the Trinity hearing in this case effectively by reviewing the briefs on summary judgment. There wasn't, you know, the briefs that were filed in the case. There wasn't an issue with respect to, uh, holding a hearing, but it's still at the at the root of it. It's a The fees are mandatory under the Crandall case and cases such as that that the Supreme Court of Colorado has decided. Do all the claims have to be 12 v. 1 or 12 v. Dismissed, or is it enough for one not to be? So the issue is, Judge Phillips, Colorado has a rule that it's the action. And the argument that we're making is the federal claims shouldn't count within the action because of the preemptive ability of 42 United States Code Section 1988 related to whether anybody gets fees on a federal claim. And the analysis that I would argue is this, Your Honor. If there is federal claims and state law claims, the court needs to look at the state law of Colorado as the rule of decision in the state law claims. Because this court, while the District Court of Colorado in cases that are cited in the brief suggests that this is part of the substantive law of the state of Colorado. And because it's part of the substantive law of the state of Colorado, it shouldn't be that the fact of adding the federal claims to it disrupts the substantive law of the state of Colorado. Is that a matter of first impression? Or do you have authority saying there is no case that decides that issue specifically? That would be a matter of first impression for this court, Your Honor. Erie versus Long Island Railroad. Well, I mean, there is maybe Erie versus Long Island White Oat. I mean, it is clear that the court of Colorado, the District Court in Colorado has decided this is a matter of substantive Colorado law. And because it's a matter of substantive Colorado law, it's our contention that the rule of decision for the fees of the negligence claim has to be Colorado law, and you shouldn't be allowed to let the federal claims deal with, you know, overcome that. And let me just say one other point, and then I'll defer to Mr. Falls, unless the court has other questions. Think of it this way, Your Honors. If the District Court, instead of exercising its supplemental jurisdiction and its discretion in deciding to decide the negligence case, ruled on all the federal claims in this case, and then dismissed the state law claims under supplemental jurisdiction principles, then they're refiled in state court, then the same thing happens and the 12B1 motion gets ruled upon in state court, then there'd be no question that attorney's fees would be the federal court decided to exercise its jurisdiction over the supplemental claims. Because remember, it is not the defendant that decided that we would be in federal court here, it is the plaintiff. I think I have one other question on the section 19-20 fees. Mr. Stern takes the position as brief that that issue was forfeited. Do you have a position on that? I do. As the alternative argument exists, I don't believe that's for forfeited. And the reason it's not forfeited is we're very clear in the motion for fees and costs that we were seeking fees and costs under Colorado law. And we specifically, as an alternative, asked the District Court to either rule that if it disagreed with the analysis under Colorado law that we were entitled to fees under 19-20 and therefore would get fees as awarded by the District Court, or to give us as would ordinarily be done after that decision with respect to the issue, having it go before the clerk under Rule 54. The District Court did neither in this case, and Mr. Stern is wrong under this court's authority to suggest that we have some requirement to move for reconsideration or anything like that. That's an error from the District Court. There is no requirement to move for reconsideration. And if this court believes that the District Court committed error, it's not waived and it would need to be determined by the District Court on a remand from this court. Did you file a Rule 54 motion? I did not file a Rule 54 motion, although I invoked Rule 54 generally in the motion for attorneys fees and costs and noted the issue is set forth in our brief, in both briefs, actually, in this case, in a paragraph towards the end related to, you know, what we specifically told the court because we thought because the fee or the costs available under Colorado law are broader than the costs available under 19-20, specifically the ability to recover expert fees, the position we took was the court needed to decide that issue. And then if it denied that, needed to decide whether we were entitled to fees under 19-20. And the court never reached that issue and it's in its order on the motion for fees and costs. Why not just file an itemization and let the court figure that out later? The reason, Your Honor, is because the way that it works on in Colorado is if you filed an itemization, you go to a hearing before the clerk of the District Court and then there's a review of taxation of costs under, you know, Rule 54 after the clerk makes its determination. And it didn't make sense to me to require us to do an itemization under 19-20 at the same time as we're doing a motion for costs under Colorado law, given the fact that the costs under Colorado law are broader demonstrably than what the costs would be under Section 19-20. All right. Thank you, Counsel. Mr. Falls, did you have anything to add? You're on mute. You're muted still. I apologize, Your Honor. Greg Falls on behalf of James Stern. And where the jury has heard evidence that the plaintiff walked in front of a moving car in the northbound lane, mid-block, at night, far from any crosswalk, there are just too many jury decision points to credibly argue under an abuse of discretion standard that the evidence points to just one way. And the trial court agreed with that in ruling on the motion. And I stand on the briefs. I'm here to answer any questions for the court. All right. Hearing none, any of the other appellee counsel have anything to add? Otherwise, we'll move back to Mr. Stern for rebuttal. All right, Mr. Stern, you have five minutes for rebuttal. Could you address the jurisdictional untimely notice of appeal issue? Judge, I put it into the brief that I filed on the issue. It definitely helps to have the resources of an appeal attorney who understands these issues. I understand I'm not the only attorney who doesn't practice an appellate work that has made this error. It's up to the court to decide whether or not you have the discretion to hear the entire appeal that was intended in regard to the summary judgment motions. Do we have any discretion under the circumstances? Do you have discretion? Yes. I thought it was jurisdictional. Well, in this case, as the brief shows, it's not a matter of the defendants having noticed. As you know, Mr. Ringel had asked me whether or not he intended. And I said, yes, I intended on the summary judgment motion. So it was known. But it wasn't done according to the procedure. And I understand that you can adjust the procedure as you feel is correct, except if it's jurisdictional. And I'm not going to say more than what's in my brief. It was clearly an error in following the court's procedures. And I understand that if you find that the court lacks jurisdiction based on this, then you wouldn't be able to do that. Thank you. Yes. In 1990, when Mrs. Lewis was 23 years old, then President Bush signed the ADA and promised a bright new era of independence and freedom where people with disabilities could now pass through once closed doors. But this promise is not obtained, even though there's been law after law passed to assist in this. The Architectural Section 504, the Rehabilitation Act of 1973, 48 years ago, and the ADA of 1990, 31 years ago. The disabled are second class citizens because they cannot fully join in their community. And when the disabled are segregated by inaccessibility, they are foreign and unknown in the broader community, which leads to ignorance and misunderstanding in the broad community and juries. This failure is contrary to our Constitution and our Declaration of Independence. At the core of this court's mission is the constitutional right to equal justice under the law, which includes the right to a fair trial by a jury. The right of the people to a jury is included three times in the Bill of Rights, the Fifth Amendment grand jury right, Sixth Amendment for criminal jury trials, and the Seventh Amendment right of trial by jury in civil matters. A party's constitutional right to a jury is not satisfied by simply a ritual. This is simply a ritual trial, as Justice Stewart wrote in Jackson v. Virginia. The jury's verdict must be reasonable and based on the law and the facts. And it was the duty of the district court to ensure a fair trial to all parties and ensure that a party is not a victim of a miscarriage of justice, as stated in 10th Circuit case from 1960. A view of the record shows that the jury's verdict was unreasonable, and Mrs. Lewis is a victim of a miscarriage of justice. It is unlikely to imagine a jury finding a police officer or a construction worker to be the negligent party under the facts adduced at this trial. The answer to the question of how the jury placed full blame on Mrs. Lewis is simple. A blind woman does not have the same right to travel. She should not have been out walking. If you can imagine that a five-foot-seven walking orange traffic cone was not a blind student returning to her student housing, but instead was a water department worker wearing a construction orange coat while doing his job, working in a construction zone with a cane, this goes to my argument to the court that Mr. Powers, you know, continually changed his story and was incredible. And then his last story, which he never said before, was that she jumped out in front of him, but the disinterested witnesses or witness said she did not. She was always continuously walking. Now, yet Mrs. Lewis was found fully responsible. I see that my time is up. Thank you, counsel. I understand the positions. We appreciate the arguments and you are excused. The case shall be submitted.